IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
CHRYSTA GALES GRAVES, as      )
Administratrix of the         )
Estate of Michael Steven      )
Gales, deceased,              )
                              )
     Plaintiff,               )
                              )         CIVIL ACTION NO.
     v.                       )            1:08cv75-MHT
                              )               (WO)
WACHOVIA BANK, National       )
Association,                  )
                              )
     Defendant.               )
```

OPINION

Plaintiff Chrysta Gales Graves, as the administratrix of the estate of Michael Gales, brings this lawsuit against defendant Wachovia Bank asserting two state-law claims: (1) breach of agreement and (2) failure to pay in good faith. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1333 (diversity of citizenship) and 1441 (removal). The case is now before the court on Wachovia's motion for summary judgment. The motion will be granted.

## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding whether summary judgment should be granted, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. PROCEDURAL HISTORY

Plaintiff's initial complaint asserted eight different claims, including tort-law claims for negligence, wantonness, conversion, negligent supervision, and equity.  After Wachovia filed its summary-judgment motion, however, plaintiff filed a motion to dismiss six of her claims.  Citing a "mental lapse," she noted that she had alleged various <u>tort</u>

2

claims that do not survive the death of the decedent and therefore could not be raised by the estate. M. Dismiss. at 1; Doc. No. 30. The court granted this motion to dismiss, leaving only the contract claims for breach of agreement and failure to pay in good faith.

## III. FACTUAL BACKGROUND

On May 26, 2006, Michael Gales opened a multi-party bank account with Wachovia. He opened this account in his own name and in the names of his parents, with rights of survivorship in each. One month later, however, he changed the account to a single-party account, payable on death, with his parents named as beneficiaries. When he opened the account, and again when he converted it into a single-party account, Gales signed a Customer Access Agreement, which incorporated the terms and conditions of Wachovia's Deposit Agreement.

On February 23, 2007, Gales died. Wachovia immediately paid the balance of the account ($ 394,351.93) to his parents. On March 28, 2007,

plaintiff, Gales's daughter, was named administratrix of the estate. About this same time, plaintiff requested information concerning her father's bank account with Wachovia. On April 9, 2007, plaintiff contacted the bank concerning a number of checks that she believed to have been forged on her father's account. The allegedly forged checks were cashed between October 20, 2006, and February 26, 2007.

After being contacted by plaintiff, Wachovia reimbursed the account for five of the allegedly forged checks, totaling more than $ 8,330. The bank refused to reimburse the account on the remaining checks, however, citing a provision in the Deposit Agreement which states that a customer has up to 40 days after receiving a statement to notify the bank of any checks that have forged or missing signatures.[1] If a customer fails to report such errors within 40 days, the customer will "lose any and all rights ... to assert the error or

---

1. 1975 Ala. Code § 7-4-104(5) defines "customer" as any "person having an account with a bank or for whom the bank has agreed to collect items ...."

4

discrepancy" against the bank.  Deposit Agreement at ¶ 9.  There is no evidence that Gales ever reported any forgeries, missing signatures, or discrepancies in his account to Wachovia or anyone else.  There is also no evidence that his parents, as beneficiaries on the account, contacted the bank regarding any errors.

One year later, on April 9, 2008, Gales's parents assigned their interest or rights in the account to plaintiff, as administratrix of Gales's estate.


## IV. DISCUSSION

Section 7-4-406 of the 1975 Alabama Code governs a "customer's duty to discover and report unauthorized signatures or alterations" on any checks paid by the bank.  This section provides that a bank customer is precluded from suing the bank on forged checks if the customer fails to exercise ordinary care in reviewing any statements and notifying the bank of any forgeries within 30 days after the first forged item appeared on a monthly statement.  1975 Ala. Code § 7-4-406(d)(2).  There is an

5

exception to this preclusion, however, which provides that a customer may bring a claim, within 180 days, if she establishes that the "bank failed to exercise ordinary care in paying the [forged check] and that failure contributed to loss." 1975 Ala. Code § 7-4-406(e).

Section 7-4-406 is not the only applicable provision here. Section 7-4-103(a) provides that,

> "The effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care .... However, parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable."

1975 Ala. Code § 7-4-103(a). And § 7-1-102(b) speaks more directly to the modification of time frames. It states, "Whenever this title requires an action to be taken within a reasonable time, a time that is not manifestly unreasonable may be fixed by agreement." 1975 Ala. Code § 7-1-102(b).

6

Plaintiff asserts that § 7-4-406(e) of the Code should govern this dispute and that she should be permitted to assert claims against the bank on any checks written with the 180 days preceding her contact with the bank on April 9, 2007.  Wachovia responds that the Deposit Agreement modified these provisions, establishing a 40-day time frame for reporting any alleged forgeries, after which all claims are extinguished.

The court determines that the Deposit Agreement should control this dispute.  First, the court notes that the Deposit Agreement does not eliminate Wachovia's duty of good faith, nor does it limit the measure of damages; it simply reduces the time period in which a customer must report any forged or missing signatures before any such claims are extinguished.  As such, it does not violate the explicit limitations laid out in § 7-4-103(a) of the Code.

Even more, plaintiff has presented no argument that the 40-day period is manifestly unreasonable, nor has she argued that the contract was otherwise unconscionable.

7

She simply asserts that it does not apply. In <u>McCulley v. SouthTrust Bank of Baldwin County</u>, 575 So.2d 1106 (Ala. 1991), the Alabama Supreme Court addressed a similar situation; although it did not discuss the interplay between the provisions of the Alabama Code and the contract, the court applied the time period provided in the contract. The Court summarized the case and its holding stating that,

> "The contract that the Bank is accused ... of breaching required [the owner of the account] to notify the Bank of any error contained in the statement of account sent to her within 10 calendar days after the closing date of the statement. She did not do so in regard to the $ 15,000 debit. Therefore, in accordance with the contract, the statement of account was 'conclusively deemed to be correct after [the] 10-day period.'"

<u>Id.</u> at 1108 (quoting the language of the contract).

A number of other state courts, however, have specifically addressed provisions of their commercial codes similar to Alabama's and have enforced contracts reducing the applicable notification periods. <u>See</u> <u>Bank</u>

of America, N.A. v. Putnal Seed and Grain, Inc., 965 So. 2d 300, 301 (Fla. Ct. App. 2007) (approving reduction of time period from one year to sixty days, finding that it did not "absolve the bank of its duty to exercise ordinary care," and stating that the "60-day notice requirement only creates a condition precedent which Putnal must comply with before it may seek reimbursement"); Peak v. Tuscaloosa Commerce Bank, 707 So. 2d 59 (La. Ct. App. 1997) (approving 30-day time period in similar situation); Nat'l Title Ins. Corp. Agency v. First Union Nat'l Bank, 559 S.E.2d 668, 672 (2002) (determining that reduction by contract from one year to 60 days "not manifestly unreasonable" under state code).

As noted above, there is no evidence that Gales himself ever contacted Wachovia concerning any of the allegedly forged checks written on his account. When he died, his interest in the account immediately passed to his parents. The bank's Account Selection Notice is very clear on this point, setting forth that, "On the death of

the account owner, ownership of the account passes to the POD beneficiary(ies).  The account is not part of the owner's estate." Def. Ex. D.  But plaintiff has not presented any evidence that Gales's parents (the beneficiaries) contacted the bank.  Finally, although plaintiff contacted the bank in April 2007, she (as administratrix of the estate) did not obtain any rights to this account until April 2008, more than one year after Gales's death, and far beyond the expiration of the 40-day period established in the Deposit Agreement. Because plaintiff has not presented any evidence that a customer (either Gales or his parents) contacted Wachovia within the 40-day period established in the contract, there is no genuine question of material fact on her breach-of-contract claim.  Summary judgment will be granted on this claim.[2]

---

    3. The court notes that, even if it had decided that plaintiff was a "customer" according to the Deposit Agreement, she would be able to assert only a small portion of her claims.  She first notified Wachovia of the alleged forgeries on April 9, 2007.  Her claims, therefore, would be limited to any errors contained in a
(continued...)

Plaintiff's remaining claim alleges that Wachovia "was on notice of the forged signatures," and "despite being placed on notice of the same, ... failed to pay and restore the same to ... decedent's account in good faith." Pl. Compl. at ¶¶ 48-49.  This claim also fails.  Because the court has determined that the bank has no contractual obligation to pay Gales's estate for the allegedly forged checks, there can be no claim that it has refused to pay in bad faith.  Therefore, summary judgment will be granted on this claim as well.

***

For the foregoing reasons, the court concludes that summary judgment should be granted in favor of Wachovia. An appropriate judgment will be entered.

DONE, this the 10th day of April, 2009.

                                 /s/ Myron H. Thompson
                               UNITED STATES DISTRICT JUDGE

---

(...continued)
statement received within the previous 40-day period.  In other words, she could claim only those errors first contained in a statement received (posthumously) after February 28, 2007.